**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MAUREEN J. RUTTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   Case No. CIV-05-1272-F |
| | ) |
| EQUI-MANAGEMENT SERVICES, | ) |
| LTD., | ) |
| | ) |
| Defendant. | ) |

## O R D E R

Before the court is Defendant's Motion for Summary Judgment, filed November 1, 2006 (doc. no. 24). Plaintiff responded to the motion on November 21, 2006 (doc. no. 27), defendant replied thereto on December 18, 2006 (doc. no. 31), and plaintiff filed a sur-reply on December 27, 2006 (doc. no. 38). Upon due consideration of the parties' submissions, the court makes its determination.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress &

Co., 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Background

Plaintiff, Maureen J. Rutty ("Rutty"), commenced the above-entitled action on November 2, 2005.  In the First Amended Complaint filed July 20, 2006 (doc. no. 19), Rutty alleges claims against defendant, Equi-Management Services, Ltd. ("EMSL"), her former employer, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), for national origin discrimination and harassment and for retaliation, and under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), for age discrimination and harassment and for retaliation.  Plaintiff also alleges a state law claim for wrongful discharge in violation of Oklahoma public policy against age discrimination as set forth in the Oklahoma Anti-Discrimination Act, 25 O.S. § 1101, *et seq.*  EMSL, in its motion, seeks summary judgment on all claims.  The following relevant facts are taken from the summary judgment record and are either undisputed or viewed in a light most favorable to Rutty.

Rutty, who was born in London, England and was at all times relevant to this case over 40 years of age, was employed by EMSL from approximately March 17, 2005 until June 24, 2005.  Exhibit A to EMSL's motion, Rutty's deposition, p. 7, ll. 11-12; p. 131, ll. 8-24; Exhibit 2 to Rutty's response, Rutty's deposition, p. 19, ll. 8-11.  Prior to her employment with EMSL, Rutty worked for TGG Staffing Agency, which was a company owned by EMSL.  Exhibit 2 to Rutty's response, Rutty's deposition, p. 36, ll. 7-11.  Rutty's job duties for TGG Staffing Agency included marketing the company's services. Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 4. In approximately March of 2005, TGG Staffing Agency was dissolved.  The head

2

of the company, Dale Silvernail, recommended Rutty to Eric Lindsey ("Lindsey"), an employee of EMSL, who was the chief executive officer of Silver Oak Senior Living. *Id*.; *see also*, Exhibit G to EMSL's motion, Lindsey's affidavit, ¶ 1.  Lindsey hired Rutty to work in marketing based upon Mr. Silvernail's recommendation.  Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 5.  Lindsey told Rutty to report to Casey Soulek ("Soulek"), director of marketing.  *Id*., ¶ 6.  When Rutty introduced herself, Soulek, who was in her twenties, commented that she was not looking for someone older than her mother to work with her in the office.  She also told Rutty that she did not want to work with someone who had an accent like Rutty.  When Rutty would speak, Soulek would repeat what was said and would mimic Rutty's accent.  Soulek told Rutty that she hated the way she talked and told Rutty she talked funny.  At the end of the first day, Soulek again stated that she was expecting someone her own age. *Id*., ¶¶ 6-7.

Soulek was Rutty's direct supervisor during her employment.  Exhibit 2 to Rutty's response, Rutty's deposition, p. 125, ll. 15-16; Exhibit 4 to Rutty's response, Defendant's Answers to Plaintiff's First Set of Interrogatories, Answer to Interrogatory No. 22.  Rutty was the only marketing employee under Soulek.  Exhibit 2 to Rutty's response, Rutty's deposition, p. 125, ll. 21-24.  Throughout Rutty's employment, Soulek commented on Rutty's age and her accent on a daily basis. Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 8.

Soulek routinely had Rutty get her coffee in the morning and then would send her back for more coffee because it did not have the right amount of sugar or cream or it was not hot enough.  Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 8. Soulek required Rutty to perform personal errands for her and then required Rutty to work late to perform her job duties, without additional pay.  *Id*., ¶ 13.  She would call Rutty into work on short notice or require her to stay late or work weekends in order

to finish jobs which Soulek had known about for weeks.  *Id.* ¶¶ 11-12, 14-15.  On one occasion, Soulek told Rutty to go to an exhibition at the state fairgrounds at 6:30 a.m., when the fairgrounds did not open until 9:00 a.m.  *Id.*, ¶ 16.  On another occasion, Soulek told Rutty at 4:00 p.m. to send out 300 invitations for a steak dinner to be given in two days for residents, family members and guests.  When she gave Rutty the project, Soulek stated that "[a]t your age, you have nothing better to do."  ¶ 15.  On yet another occasion, Soulek told Rutty to leave a meeting of the Oklahoma Assisted Living Association in Norman because "at [her] age, [she] did not need to be there with young people."  *Id.*, ¶ 16.  Soulek would not allow Rutty to use the computer until after 5:00 p.m., stating that Rutty was old and did not have anything better to do than to stay after 5:00 p.m.  *Id.*, ¶ 14.

Rutty complained to Jim Robertson ("Robertson"), Soulek's supervisor, approximately one week after her arrival.  Exhibit 2 to Rutty's response, Rutty's deposition, p. 145, ll. 21-23.  She told Robertson that Soulek did not like Rutty and that she had made negative comments about Rutty's age and national origin.  *Id.*, p. 146, ll. 2-20.  Rutty complained again to Robertson on several other occasions in April.  Despite her complaints, no corrective action was taken.  Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 19.

In early to mid-April, Soulek wrote a memo providing two ground rules for Rutty to follow based upon an incident which occurred on April 8, 2005.  According to Soulek, Rutty had been sitting with the receptionist after hours.  The receptionist made some negative comments and Rutty told the receptionist she needed to turn in her notice if she was unhappy instead of just quitting.  According to the memo, Rutty also made some comments to a resident that were perceived as derogatory about Robertson.  Soulek gave Rutty the following ground rules: (1) she would not sit up

front with the receptionist; and (2) she would not stay after hours unless working with Soulek.  Exhibit K to EMSL's motion.

On April 20, 2005, Rutty was given disciplinary action in the form of a verbal warning (counseling) from Soulek.  According to the disciplinary report, Soulek called Rutty on her cell phone three times on April 18, 2005, leaving messages each time, and Rutty did not return any of the messages.  The report indicated that Rutty had not received any warning prior to this incident.  According to Rutty, she had received only one call on that day, at 6:30 p.m.  Exhibit J to EMSL's motion; Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 23.

On April 29, 2005, Rutty wrote a memo to Lindsey complaining of Soulek's treatment of her.  Exhibit 4 to Rutty's response, Defendant's Answers to Plaintiff's First Set of  Interrogatories, Answer to Interrogatory No. 16, Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 19.  Rutty had a meeting with Lindsey and Jennifer Upshaw, an executive director of EMSL, to discuss her problems.  *Id.*  Rutty advised them that Soulek told her that she did not want to work with someone older than her mother and that she liked to mimic her British accent.  Exhibit 2 to Rutty's response, Rutty's deposition, p. 151, ll. 18-25, p. 152, ll. 1-2.  Lindsey and Upshaw indicated that Rutty would be moved from Soulek's supervision to Robertson's supervision.  *Id.*, p. 151, ll. 5-7, Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 19.  The next day, Rutty advised Robinson that she had talked with Lindsey.  Robinson replied, "yes."  Exhibit 2 to Rutty's response, Rutty's deposition, p. 151, ll. 10-11.  Rutty then said that "I was told that you would be my supervisor from now on."  *Id.*, p. 151, ll. 12-13.  Robertson, however, told Rutty that he was too busy to get involved in marketing and Soulek remained Rutty's supervisor.  *Id.*, p. 151, ll. 13-17.

Rutty sent a letter dated May 18, 2005 to Lindsey requesting assistance about the way she was being treated by Soulek.  In the letter, Rutty stated that "[Soulek]

keeps saying I am old, and she says I talk funny."  Lindsey took no action in regard to the letter.  Exhibit A to Exhibit 1 of Rutty's response.

On Friday, June 24, 2005, during a management meeting, Lindsey inquired how marketing was going.  Rutty told Lindsey that she had been out of marketing brochures for six weeks.  Lindsey asked Soulek about the brochures and she said she was working on it.  Then she told Lindsey that she had made photo albums for Rutty to hand out instead of brochures.  Lindsey asked Rutty about the albums and she told him she had not seen or heard of the albums.  Lindsey asked Soulek to stay after the meeting.  Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 24.

Later that afternoon, Soulek told Rutty get all of her work on the computer and to get all of her inventory out of her car.  Mimicking Rutty's accent, Soulek stated, "I never wanted to work with an old British bitch."  After Rutty returned with the materials from her car, Soulek told Rutty to report to Robertson's office.  When she arrived in the office, Soulek and Robertson were having a glass of wine and laughing. Robertson informed Rutty that it was not working out.  Soulek told Rutty that she wanted her to resign and handed her a resignation form.  Rutty said she was not resigning.  Rutty asked if the request to resign was work-related and Soulek said that it was not.  Soulek said that she wanted to work with someone her own age that did not talk funny.  Soulek said that if Rutty would sign the resignation form, she would be paid and have mileage reimbursed.  Rutty said she would think about it.  Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 26.

Robertson signed a Employee Separation/Exit Record dated June 24, 2005, stating that Rutty was "[difficult] to manage and has an attitude problem.  Also gave incorrect [i]nformation to corporate concerning the availability of information ([i.e.] floor plans, pricing etc.) at the SW Senior Expo.  Repeatedly did not follow supervisors instructions on her own."  Explaining why Rutty would not be rehired,

Robertson stated that Rutty "[n]eeded [too] much supervision to accomplish her duties[;] did not get along with supervisor and caused moral problems with staff." Exhibit D to EMSL's motion.

On Monday, June 27, 2005, Rutty called Lindsey to inquire whether he knew she had been asked to resign. Lindsey told her he would look into it and have Upshaw get back with Rutty. Two days later, Rutty met with Upshaw and said she had not resigned and asked if she had been fired. Upshaw said Rutty had not been fired and she would talk to Lindsey when he returned on July 5, 2005. Rutty attempted to contact Upshaw several times on July 5 and July 6. On July 7, 2005, Upshaw left a message on Rutty's phone stating that her position had been filled and for her to contact accounting for a final paycheck. Exhibit 1 to Rutty's response, Rutty's declaration, ¶ 27.

Discussion

I.  Disparate Treatment Claims - Prima Facie Case

Under the ADEA, an employer is prohibited from engaging in employment practices that "discriminate against any individual because of such individual's age." 29 U.S.C. § 623(b). A claim of age discrimination under the ADEA can be proven by either direct or circumstantial evidence. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000). If there is no direct evidence of age discrimination, the court evaluates the ADEA claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U .S. 792, 802-05 (1973). Id. at 1137. In the instant case, plaintiff represents that there is direct evidence of age discrimination. However, for purposes of defeating defendant's motion, plaintiff presents and discusses circumstantial evidence for evaluating the claim under the McDonnell Douglas framework. As a result, the court will evaluate plaintiff's claim under that framework.

The <u>McDonnell Douglas</u> framework comprises three burden shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of age discrimination. *Id*. at 802.  If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action. *Id*.  Finally, if the defendant articulates a nondiscriminatory reason, then the burden shifts to the plaintiff to show that the proffered reason is merely a pretext for age discrimination. *Id*. at 804.

To establish a prima facie case of age discrimination, the plaintiff must show that: (1) she was within the age group protected by the ADEA; (2) she was performing her job satisfactorily; (3) she was terminated, and (4) she was replaced by a younger person. <u>McKnight v. Kimberley Clark Corp.</u>, 149 F.3d 1125, 1128 (10th Cir. 1998). In its motion, EMSL contends that Rutty is unable to establish prima facie case because she cannot show that she was performing the duties of her job adequately at the time of her termination.  EMSL maintains that Rutty was terminated because for "her inability to work with other employees and for failures in performing her duties." *See*, EMSL's motion, pp. 6-7.  According to EMSL, plaintiff has "admitted that she was disciplined for multiple failures to properly perform her duties by returning phone calls and providing required information and brochures to prospective clients." *Id*. at p. 7.  Because Rutty cannot make the required showing that she performed her job duties in a satisfactory way, EMSL contends that Rutty's age discrimination claim must fail as a matter of law.

In <u>MacDonald v. Eastern Wyoming Mental Health Center</u>, 941 F.2d 1115 (10th Cir. 1991), plaintiffs asserted that their discharge was the result of age discrimination in violation of the ADEA. The district court ruled that plaintiffs had not made out a prima facie case of age discrimination, basing its conclusion on defendant's proffered nondiscriminatory reasons for plaintiffs' termination.  The Tenth Circuit, on appeal,

held that the district court had misapplied the law. The court concluded that ruling that plaintiffs did not establish a prima facie case based on defendant's reasons for their discharge,

> "raises serious problems under the <u>McDonnell Douglas</u> analysis, which mandates a full and fair opportunity for a plaintiff to demonstrate pretext. Short-circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual and/or that age was the determining factor; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on these critical issues."

*Id*. at 1119. The Tenth Circuit therefore held that the employer's reasons for the adverse action are not "appropriately brought as a challenge to the sufficiency of [the plaintiff's] prima facie case." *Id*. at 1120 (quoting <u>Yarbrough v. Tower Oldsmobile, Inc.</u>, 789 F.2d 508, 512 (7th Cir.1986)). Rather, the employer's evidence is properly considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination. The Tenth Circuit concluded that a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that plaintiff continued to possess the objective qualifications plaintiff held when plaintiff was hired, or by plaintiff's own testimony that plaintiff's work was satisfactory, even when disputed by the employer, or by evidence that plaintiff had held the position for a significant period of time. *Id*. at 1121 (citation omitted).

Applying that analysis in the case at bar, the court finds that Rutty can establish a prima facie showing of age discrimination through credible evidence that she was qualified for her position, even if that evidence is disputed by EMSL. *See*, Exhibit 4 to Rutty's response, Answer to Interrogatory No. 13. In the court's view, Rutty has clearly met that burden with the evidence in the record before the court.

As noted in EMSL's motion, EMSL, due to page limitations, does not challenge Rutty's prima facie case of national origin discrimination under Title VII.  *See*, EMSL's motion, p. 6, n. 1; *see also*, Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006) (for prima facie case of Title VII discriminatory termination, plaintiff required to show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was terminated; and (4) the job was not thereafter eliminated).  The court therefore assumes for purposes of EMSL's motion that Rutty can establish a prima facie case of national origin discrimination under Title VII.[1]

## II.  Retaliation Claims - Prima Facie Case

Next, in its motion, EMSL contends that Rutty has no evidence to support her retaliation claims under Title VII or the ADEA.  To establish a prima facie case of retaliation under Title VII, Rutty must show that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action.  *See*, Antonio, 458 F.3d at 1181. Similarly, to establish a prima facie case of retaliation under the ADEA, Rutty must show that (1) she availed herself of a protected right under the ADEA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions.  MacKenzie v. City and County of Denver, 414 F.3d 1266, 1279 (10th Cir. 2005).

EMSL contends that Rutty cannot establish the first element of her prima facie case of retaliation under Title VII because she did not engage in any protected

---

[1]  As with the ADEA claim, Rutty represents that there is direct evidence of national origin discrimination.  However, for purposes of defeating defendant's motion, plaintiff presents and discusses circumstantial evidence for evaluating the claim under the McDonnell Douglas framework.  As a result, the court will evaluate plaintiff's claim under that framework.

opposition to discrimination under Title VII.  According to EMSL, Rutty's memo to Lindsey in April which complains of adverse treatment from Soulak refers only to treatment based upon Rutty's "mature age."  EMSL asserts that Rutty made no complaint in the memo related to her national origin.  Because complaints of age-related discrimination are not protected by Title VII, EMSL contends that Rutty cannot demonstrate that she engaged in protected activity under Title VII.

EMSL also contends that Rutty cannot establish the third element of her prima facie case of retaliation under Title VII or the ADEA because she cannot show a causal connection between any protected activity and her termination.  EMSL asserts that Rutty was terminated by Robertson.  According to EMSL, Rutty did not inform Robertson of her complaint to Lindsey.  Because Robertson was not aware of the complaint to Lindsey, EMSL contends that Rutty cannot show a causal connection between the complaint to Lindsey and Robertson's decision to terminate Rutty.

Upon review of the record, the court concludes that Rutty has presented sufficient evidence to make a prima facie case of retaliation under Title VII and the ADEA.  In her declaration submitted with her response brief, Rutty states that she complained to Robertson after the first week of employment about negative comments made by Soulek regarding Rutty's age and national origin.  She also states that she complained to Robertson on "several occasions" in April that Soulek was making derogatory remarks about her age and that she was mimicking Rutty's accent.  *See*, O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1255 (10th Cir. 2001) ("Informal complaints to superiors constitute protected activity.").  Also, Rutty testified in deposition that she sent a memo to Lindsey in late April (April 29, 2005 according to EMSL's Answer to Interrogatory No. 16) and had a meeting with him.  According to

Rutty, she told Lindsey of both the age and national origin comments.[2]  The next day,
Rutty told Robertson that she had talked with Lindsey and he replied, "yes."  Rutty's
employment was terminated a little less than two months later.[3]  The Tenth Circuit has
recognized temporal proximity between protected conduct and termination as relevant
evidence of a causal connection sufficient to "justify an inference of retaliatory
motive."  O'Neal, 237 F.3d at 1253.  The court, however, has emphasized that a
plaintiff may rely on temporal proximity alone only if "the termination is *very closely*
connected in time to the protected activity."  Anderson v. Coors Brewing, 181 F.3d
1171, 1179 (10th Cir. 1999)(emphasis in original).  The court has concluded that one
and one-half months between the protected activity and termination gives rise to a
rebuttable inference of a causal connection, but that a period of three months does not.
*Id*.  The court has assumed without deciding that two months and one week was
sufficient.  *Id*.; *see also*, Webb v. Level 3 Communications, LLC, 167 Fed.Appx. 725
(10th Cir., January 25, 2006) (assuming two months is sufficient in itself to establish
causation).[4]  Although the Tenth Circuit has not definitely decided whether
approximately two months  between the protected activity and the adverse action is
sufficient in itself to establish causation, the court concludes, for purposes of this
motion, that the evidence in this case (protected activity a little less than two months

---

[2]As previously stated, EMSL contends that the April memo complains of Soulek's treatment
of Rutty due to her "mature age."  The summary judgment record does not contain a copy of that
memo.  Rutty, however, testified that she also told Lindsey that Soulek liked to mimic her Britich
accent.  *See*, Exhibit 2 to Rutty's response, Rutty's deposition, p. 151, ll. 23-25, p. 152, ll. 1-2.

[3]In her briefing, Rutty relies upon the May 18, 2005 letter to Lindsey to support her prima
facie cases of retaliation.  However, there is not sufficient evidence in the record for a reasonable
jury to conclude that Robertson knew of this letter.  In addition, there is not sufficient evidence in
the record for a reasonable jury to conclude that Lindsey was involved in the decision to terminate.

[4]This unpublished opinion is cited in accordance with 10th Cir. R. 36.3.

prior to termination) is sufficient to avoid summary judgment as to Rutty's prima facie cases of retaliation under Title VII and the ADEA.[5]

III.  Articulated Reasons for Rutty's Termination

Because Rutty can establish prima facie cases for her disparate treatment and retaliation claims, the burden shifts to EMSL to articulate a non-discriminatory and non-retaliatory reason for Rutty's termination.  EMSL, in its motion, proffers that Rutty was terminated because she required an excessive amount of supervision to perform her marketing duties, she had an attitude problem with dealing with co-workers, she provided incorrect information and she refused to follow instructions. Exhibit D to EMSL's motion; EMSL's motion, p. 9.  EMSL's reasons for Rutty's termination are legitimate, non-discriminatory and non-retaliatory reasons.  The burden therefore shifts back to Rutty to demonstrate that the proffered explanation is a pretext for discrimination and for retaliation.

IV.  Pretext

Rutty can avoid summary judgment by presenting evidence sufficient to raise genuine disputes of material fact regarding whether  EMSL's articulated reasons for its adverse employment action are pretextual.  *See*, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-149 (2000)("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also*, Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir.1995).  Rutty can show pretext by revealing "weaknesses, implausibilities, inconsistencies, or contradictions

---

[5]As hereinafter discussed, the court concludes that the retaliation claims should proceed to trial.  However, the court advises the parties that close attention may be given to the retaliation claims on a Fed. R. Civ. P. 50 challenge, after the court has heard all the evidence as to the complaints to Robertson (including the timing of the complaints) and the extent of Robertson's knowledge of the April 29th memo and meeting with Lindsey.

in [EMSL's] proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [EMSL] did not act for the asserted non-discriminatory [or non-retaliatory ] reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and quotations omitted).

Taking Rutty's version of the facts from her deposition testimony and her declaration as true, the court concludes that Rutty has presented sufficient evidence to raise genuine issues of material fact as to whether EMSL's articulated reasons for the termination are pretextual. Although EMSL challenges some of the deposition testimony and declaration as self-serving, it is clear that the challenged testimony and declaration are based upon Rutty's personal knowledge and set forth specific facts which would be admissible at trial. While the testimony and declaration may be inherently self-serving, EMSL is essentially asking the court to act as a factfinder in adjudicating EMSL's motion. However, credibility determinations are not to be made on summary judgment review. Plotke v. White, 405 F.3d 1092, 1103 (10th Cir. 2005); Hirase-Doi v. U.S. West Communications, 61 F.3d 777, 785 n. 4 (10th Cir. 1995). The jury will have the opportunity to decide which version of the facts (Rutty's or EMSL's) is more credible. At this stage, Rutty has presented sufficient evidence for a reasonable jury to conclude that EMSL's articulated reasons for termination are pretextual. The disparate treatment and retaliation claims shall therefore proceed to trial.

V. Hostile Work Environment Claims

EMSL contends that Rutty's hostile work environment claims under Title VII and the ADEA fail because Rutty cannot demonstrate that any alleged discriminatory conduct was sufficiently severe or pervasive to support such claims.

14

For a hostile work environment claim to survive a summary judgment motion, "a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." MacKenzie, 414 F.3d at 1280; McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 923 (10th Cir. 2001). The severity and pervasiveness of the challenged conduct must be judged from both an objective and a subjective perspective. O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). The objective severity of harassment should be judged from the perspective of a reasonable person in Rutty's position. Id. Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id; MacKenzie, 414 F.3d at 1280.

Facially neutral abusive conduct can support a finding of age animus or national origin animus to sustain a hostile work environment when that conduct is viewed in the context of other, overtly discriminatory conduct based upon age or national origin. O'Shea, 185 F.3d at 1097. All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII or the ADEA "if they are part of a course of conduct which is tied to evidence of discriminatory animus. Harassment alleged to be because of [age or national origin] need not be explicitly [ageist or national origin] in nature." Id. (quotation omitted).

Having reviewed the evidence in light most favorable to Rutty, the court finds that a reasonable jury could conclude that as a result of Soulek's conduct, Rutty was subjected to an environment that was permeated with discriminatory intimidation,

ridicule and insult based upon age and national origin.   The court additionally concludes that Rutty has presented sufficient evidence to establish genuine issues of material fact regarding whether the alleged conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.[6]   Although EMSL challenges Rutty's deposition testimony and declaration supporting her claims as self-serving, the court again concludes that EMSL is seeking to have the court act as a factfinder, which is improper on summary judgment review.   Rutty's testimony and declaration are based upon personal knowledge and set forth specific facts that would be admissible at trial.  They may be inherently self-serving but they comply with the requirements of the federal rules. The credibility of Rutty's version of the facts is to be decided by the jury.  The hostile work environment claims shall therefore proceed to trial.

V.  Wrongful Discharge Claim

        EMSL seeks summary judgment on Rutty's wrongful discharge claim on the basis that Rutty has failed to show any violation of clear public policy.   However, plaintiff, in the First Amended Complaint, alleges that termination of her employment based upon her age violates the public policy of Oklahoma as set forth in the Oklahoma Anti-Discrimination Act, 25 O.S. § 1101, *et seq*.  The Oklahoma Supreme Court held in Saint v. Data Exchange Inc., 145 P.3d 1037 (2006), that a Burk tort claim (Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989)) for wrongful termination from employment may be asserted by a plaintiff who alleges employment discrimination on the basis of age.   As the ADEA claim will proceed to trial, the court will allow the wrongful discharge claim (Burk tort claim) to proceed as well.

---

        [6]The court is also mindful that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact."  O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999) (quotations omitted).

Based upon the foregoing, Defendant's Motion for Summary Judgment, filed November 1, 2006 (doc.  no. 24), is **DENIED**.

DATED January 9, 2007.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-1272p008(pub).wpd